**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **THOMAS G. TIRONE,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    **No. 20-cv-02807-SHM** |
| | ) |
| **AMERICAN LEBANESE SYRIAN** | ) |
| **ASSOCIATED CHARITIES, INC.,** | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

**ORDER DENYING ALSAC'S MOTION TO STRIKE AND GRANTING IN PART AND
DENYING IN PART TIRONE'S MOTION TO DISMISS**

Before the Court is Defendant American Lebanese Syrian Associated Charities, Inc.'s ("ALSAC") January 22, 2020 Motion to Strike. (D.E. No. 18.) Plaintiff Thomas G. Tirone ("Tirone") responded on March 6, 2020. (D.E. No. 26.) ALSAC replied on March 20, 2020. (D.E. No. 30.) Also before the Court is Tirone's March 6, 2020 Motion to Dismiss ALSAC's Counterclaims For Failure to State a Claim and to Dismiss ALSAC's Counterclaims for Lack of Jurisdiction or in the Alternative for a More Definite Statement (the "Motion to Dismiss".) (D.E. No. 25.) ALSAC responded on April 3, 2020. (D.E. No. 34.) Tirone replied on April 17, 2020.) (D.E. No. 35.) For the following reasons, the Motion to Strike is **DENIED,** and the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## I.    Background

On November 21, 2019, Tirone filed his Complaint in the United States District Court for the Southern District of Ohio. (D.E. No. 1.)  Tirone brings five claims.  (Id. at ¶¶ 108-160.) The first is a claim of race discrimination and retaliation under 42 U.S.C. § 1981 because ALSAC terminated Tirone's employment based on his race and in retaliation for his protected reporting. (Id. at ¶¶ 108-117.)  The second is a claim of race discrimination and retaliation under Title VII, 42 U.S.C. § 20000e-5(f), because ALSAC terminated Tirone based on his race and in retaliation for his protected reporting.  (Id. at ¶¶ 118-127.)  The third is a claim of retaliation under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12117, et seq., for disability discrimination and retaliation for protected reporting.  (Id. at ¶¶ 128-136.)  The fourth is a claim under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621, et seq., for age discrimination and retaliation for protected reporting.  (Id. at ¶¶ 137-147.)  The fifth is a claim under the Family Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2601, et seq., because ALSAC terminated Tirone based on his failure to perform work while on FMLA leave.  (Id. at ¶¶ 148-160.)

ALSAC brings five Counterclaims.  (D.E. No. 20, "Counterclaims", ¶¶ 46-76.)  The first seeks a declaration that Tirone entered into an enforceable Non-Disclosure Agreement (the

2

"NDA") with ALSAC.  (Id. at ¶¶ 46-53.)  The second is for breach of the NDA because Tirone disclosed protected information online. (Id. at ¶¶ 54-58.)  The third is for defamation because Tirone made false statements about ALSAC's fundraising practices.  (Id. at ¶¶ 59-63.)  The fourth is for false light invasion of privacy because Tirone made false statements about ALSAC.  (Id. at ¶¶ 64-71.)  The fifth is for conversion because Tirone converted ALSAC's property.  (Id. at ¶¶ 72-76.)

On December 23, 2019, ALSAC filed a Motion to Change Venue. (D.E. No. 8.)  On March 6, 2020, Tirone responded in opposition. (D.E. No. 26.)  On November 9, 2020, the District Court for the Southern District of Ohio granted ALSAC's Motion and transferred the case to this Court.  (D.E. No. 36.)

The following facts are taken from the Complaint and the Counterclaims.

ALSAC is a non-profit corporation that raises funds for St. Jude Children's Research Hospital.  (D.E. No. 20, ¶ 10.)  ALSAC employed Tirone from April 15, 2013, until May 23, 2017.  (D.E. No. 1, ¶ 9, 15.)  Tirone was hired as the Senior Director for the Center of Excellence in Analytics (the "COEA").  (Id. at ¶ 15.)  In January 2015, he was promoted to Executive Director of the COEA.  (Id. at ¶ 22.)  Tirone signed the NDA when he began his employment with ALSAC.  (Counterclaims, ¶ 13.)  "ALSAC's Assets and Proprietary Information policy prohibits the exchange

3

or transfer of data to non-ALSAC devices or accounts." (Id. at ¶ 15.)

Tirone alleges that he is White, disabled, and 63 years old. (D.E. No. 1, ¶ 11.) He alleges that ALSAC removed, demoted, or fired various managers and replaced them with African Americans. (Id. at ¶¶ 59-60.) He alleges that ALSAC admitted that Tirone was being asked to volunteer for a demotion to make room for an African American employee. (Id. at ¶ 61.) Tirone's immediate supervisor "spent two hours in an afternoon meeting with Tirone trying to convince Tirone to accept a demotion" so that another employee could have Tirone's job. (Id. at ¶ 48.) That employee was African American, younger than Tirone, and not disabled. (Id. at ¶ 19.)

ALSAC alleges that it offered to transfer Tirone to a non-management role within the organization, with no reduction in pay, because ALSAC employees "repeatedly made complaints concerning [Tirone]'s unprofessional and inappropriate conduct" and he had been coached and warned about his issues. (Counterclaims, ¶ 19.) Tirone alleges that in his first performance review he received a "Far Exceeds Expectations" review, and that in his next two he received "Exceeds Expectations" reviews. (D.E. No. 1, ¶¶ 21, 36-42.) On May 10, 2017, Tirone declined to accept a demotion and told ALSAC that

4

he believed its request was the result of unlawful discrimination. (Id. at ¶ 68.)

On May 17, 2017, at 9:19 AM, Tirone received an email from ALSAC stating that there was no basis for his complaints of discrimination and harassment. (Id. at ¶ 72a.) Around 10:00 AM, Tirone's back was injured "by an x-ray tech." (Id. at ¶ 72b.) Tirone took medication and continued to work. (Id. at ¶ 72c.)

At 1:30 PM, ALSAC summoned Tirone to a meeting and asked him about emails he had sent containing ALSAC's information. (Id. at ¶¶ 72d-72e.) ALSAC asked Tirone to provide a list of all ALSAC documents he had sent to his personal email by 10:00 AM the next day. (Id. at ¶¶ 72g-72h.) Tirone told ALSAC that he was in "severe pain and that it was not fair" to assume he could perform the task overnight. (Id. at ¶ 72i.) Tirone believed that he was singled out for an email audit in retaliation for his complaints about unlawful discrimination. (Id. at ¶ 73.) ALSAC alleges that it had previously warned Tirone not to copy information onto thumb drives, and that its IT department had discovered that Tirone had sent more than 50 emails with attachments of confidential information to his personal email account. (Counterclaims at ¶¶ 22-23.) Tirone admitted he had emailed ALSAC data to his personal email and had worked on ALSAC documents on his personal laptop. (Id. at ¶

28.)  Tirone said that he could only remember sending himself a few emails with attachments of work documents and that such emails were "infrequent."   (Id. at ¶ 29.)   Tirone signed a written agreement to return confidential information to ALSAC. (Id. at ¶ 32.)

Tirone used his pre-approved FMLA leave from May 18 through May 21, 2017.  (Id. at ¶ 75.)  On Monday, May 22, 2017, Tirone returned to work.   (Id. at ¶ 78.)   He did not provide the requested information or contact ALSAC on Monday or Tuesday to ask for more time to do so.  (Counterclaims, ¶ 35-36.)   On Tuesday, May 23, 2017, ALSAC terminated Tirone's employment based on the complaints against him and his refusal to return confidential information.  (Id. at ¶ 36.)

Tirone and ALSAC engaged in settlement negotiations addressing Tirone's discrimination claim.  (D.E. No. 1, ¶¶ 86-96.)   The parties dispute what happened next.  ALSAC alleges that, after terminating Tirone, it discovered he was disclosing ALSAC's confidential information in violation of the NDA. (Counterclaims, ¶ 37.)  ALSAC alleges that it discovered Tirone was making false statements to the public using a website called "truthtopower.re" to damage and defame ALSAC.  (Id. at ¶¶ 38-39.)  Tirone's website accused ALSAC of operating a scam to enrich itself.  (Id. at ¶¶ 40.)  ALSAC alleges that "some of the information included in this website is false, some of the

6

information is misleading and/or grossly out of context and some of the information was confidential and/or proprietary and/or would only be known by Plaintiff and [a] few individuals." (Id. at ¶ 41.)  ALSAC alleges that Tirone made additional statements on social media to harm ALSAC.  (Id. at ¶ 43.)  ALSAC alleges that Tirone wanted to discourage potential and current donors from donating money to ALSAC.  (Id. at ¶ 45.)

Tirone alleges that the Federal Bureau of Investigation (the "FBI") searched his home and confiscated his computers and telephones.  (D.E. No. 1, ¶¶ 97-98.)  Tirone "learned later that the FBI raided his house because, on November 1, 2017, ALSAC falsely alleged to the FBI that Tirone set up a fake website to divert donor money from ALSAC to Tirone." (Id. at ¶ 99.)  Tirone denies that he set up the website.  (Id. at ¶ 100.)  He alleges that ALSAC had no credible evidence that he did so.  (Id.) Tirone alleges that ALSAC "used the to FBI to intimidate, to silence, and to discredit Tirone in retaliation for his threats of pursuing civil litigation."  (Id. at ¶ 104.)

## II.  Jurisdiction and Choice of Law

### A. Jurisdiction Over the Claims

The Court has federal question jurisdiction over Tirone's claims. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  Tirone

brings his claims under the laws of the United States.  (D.E. No. 1, ¶¶ 108-160.)

### B. Jurisdiction Over the Counterclaims

ALSAC brings five Counterclaims.  All are premised on state substantive law.  One seeks declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq.  The Declaratory Judgment Act does not provide the Court with subject-matter jurisdiction. Heydon v. MediaOne of Se. Michigan, Inc., 327 F.3d 466, 470 (6th Cir. 2003).  The Court must have independent jurisdiction to grant relief under the Act. Id.

ALSAC asserts that the Court has supplemental jurisdiction under 28 U.S.C. 1367.  The Sixth Circuit formerly relied on the distinction between compulsory and permissive counterclaims under Federal Rule of Civil Procedure 13(a) to determine whether a court has supplemental jurisdiction over a counterclaim.  See Maddox v. Kentucky Finance Co., Inc., 736 F.2d 380, 382 (6th Cir. 1984) ("[A] counterclaim is within the ancillary jurisdiction of the federal district court only if it is a compulsory counterclaim under Fed. R. Civ. P. 13(a).")  Courts had ancillary jurisdiction only over compulsory counterclaims.

In 1990, Congress enacted 28 U.S.C. § 1367, which provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

> related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367.

Interpreting § 1367(a)'s broad language, many courts have abandoned the permissive/compulsory counterclaim distinction. See, e.g., Global NAPs, Inc. v. Verizon New England Inc., 603 F.3d 71, 87 (1st Cir. 2010); Jones v. Ford Motor Credit Co., 358 F.3d 205 (2d Cir. 2004); Channell v. Citicorp Nat. Servs., Inc., 89 F.3d 379 (7th Cir. 1996); Edwards v. Equitable Acceptance Corp., No. 1:14-CV-00888, 2015 WL 3607297, at *3 (N.D. Ohio June 8, 2015)(collecting cases and explaining the change in law). These courts have concluded that under § 1367(a) a district court has supplemental jurisdiction to hear a permissive counterclaim if it "form[s] a part of the same case or controversy" as the claim over which the court has original jurisdiction. See Riazi v. Ally Fin., Inc., No. 4:17CV1705JCH, 2017 WL 4260847, at *3 (E.D. Mo. Sept. 26, 2017) (elaborating on the legal standards applicable to the distinction between permissive and compulsory counterclaims under § 1367(a)).

The § 1367(a) standard is broader and more encompassing than the "arise from the same transaction or occurrence" standard under Rule 13(a). See Edwards, 2015 WL 3607297, at *3. A

leading treatise on federal civil procedure summarizes this movement in the law:

> Interpreting the statutory requirement that additional claims and parties must be part of the same case or controversy, some courts have held that even if a counterclaim is permissive and does not arise out of the same transaction and occurrence as the main claim, it nonetheless may qualify for supplemental jurisdiction if it is found to arise out of facts bearing some relationship to the main claim so that it may be deemed part of the same controversy. These courts thus are defining the same controversy more broadly than Rule 13's "transaction or occurrence" standard and conclude that the statute authorizes jurisdiction even though non-transactionally related Rule 13(b) counterclaims would have been outside the traditional assertion of ancillary jurisdiction (the predecessor to supplemental jurisdiction).

6 Wright, et al., Federal Practice and Procedure, § 1422, n.7 (3d ed. 2019) (collecting cases).

The Sixth Circuit has not directly addressed the effect of § 1367 on the permissive/compulsory counterclaim distinction, but it has observed that "[t]he first part of [§ 1367(a)] contains a sweeping grant of supplemental jurisdiction giving courts supplemental jurisdictional over all claims not excluded by the second part [of § 1367(b)]." Olden v. LaFarge Corp., 383 F.3d 495, 504 (6th Cir. 2004). The Sixth Circuit has said that "a federal court can decide a state law claim that forms part of the same 'case or controversy' as a claim over which the Court has jurisdiction." Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254 (6th Cir. 1996), amended on denial of

reh'g, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998), quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). District courts in the Sixth Circuit addressing situations like the present case have applied the case or controversy standard. See, e.g., Bates v. Am. Credit Acceptance, LLC, No. 16-12239, 2016 WL 5477429, at *2 (E.D. Mich. Sept. 29, 2016) (collecting cases).

The Sixth Circuit's reasoning is consistent with the Supreme Court's decision in Exxon Mobil that "[n]othing in § 1367 indicates a congressional intent to recognize, preserve or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary." Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 559 (2005). More recently, the Supreme Court has reaffirmed the broad grant of supplemental jurisdiction under the case or controversy standard and recognized, in dicta, Congress's clarification of the prior pendent/ancillary jurisdiction distinction. See Artis v. D.C., 138 S. Ct. 594, 598 (2018) ("Section 1367 ... codifies the court-developed pendent and ancillary jurisdiction doctrines under the label 'supplemental jurisdiction' .... Section 1367(a) provides, in relevant part, that a district court with original jurisdiction over a claim 'shall have supplemental jurisdiction over all other claims ... form[ing] part of the same case or controversy.'")

11

(alterations in original) (citing Exxon Mobil Corp., 545 U.S. at 552–58).

The case or controversy standard is now the basis for analyzing supplemental jurisdiction over counterclaims. See Exxon Mobil Corp., 545 U.S. at 559; Global NAPs, Inc., 603 F.3d at 87; Jones, 358 F.3d at 212-215; Channell, 89 F.3d at 386-87. The test for whether a court can exercise supplemental jurisdiction over a counterclaim does not depend on whether the original claim and the counterclaim "arise from the same transaction or occurrence," but whether the claims are so related that they "form part of the same case or controversy." See Bates, 2016 WL 5477429, at *2. In the Sixth Circuit, claims form part of the same case or controversy if they "derive from a common nucleus of operative facts." Packard v. Farmers Ins. Co. of Columbus Inc., 423 F. App'x 580, 583 (6th Cir. 2011); Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 209 (6th Cir. 2004); Blakely v. United States, 276 F.3d 853, 861 (6th Cir. 2002).

The parties disagree about whether ALSAC's Counterclaims are compulsory, whether the Court can exercise supplemental jurisdiction over them, and whether the Court should decline to exercise supplemental jurisdiction. The test is whether the

Court has supplemental jurisdiction under the case or controversy standard.[1]

Counterclaims form part of the same case or controversy if they "derive from a common nucleus of operative facts." Harper, 392 F.3d at 209.  The Sixth Circuit has found that standard met when the "state and federal law claims arise from the same contract, dispute, or transaction."  Packard, 423 F. App'x at 583 (finding standard met when both claims arose from a flood insurance policy) (citing Capital Park Ltd. Dividend Hous. Ass'n v. Jackson, 202 F. App'x 873, 877 (6th Cir. 2006) (same with housing contract)); see Blakely, 276 F.3d at 861-62 (same with consent judgment); Transcon. Leasing, Inc. v. Michigan Nat. Bank of Detroit, 738 F.2d 163, 166 (6th Cir. 1984) (same with banking loan).

When the plaintiff brings a claim to enforce statutory rights, the test is whether the claim and the counterclaim derive

---

[1] ALSAC's Counterclaims are permissive, not compulsory.  The Sixth Circuit considered the issue of compulsory counterclaims in a Title VII hostile-workplace sexual harassment case where the district court denied leave to amend to file a counterclaim asserting the plaintiff had violated a state law anti-eavesdropping statute. Quinn v. Griffith, 515 F. App'x 543, 458 (6th Cir. 2013).  The Sixth Circuit decided that the issues of law and fact were "not largely the same and the same evidence would not support or refute both claims" and affirmed. Id. ALSAC's Counterclaims, like the counterclaims in Quinn, are based on Tirone's conduct at the end of his employment and after his termination.

from a common nucleus of operative facts.  In cases under the
Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (the "FLSA"),
courts have found that a defendant's FLSA claim and state law
counterclaims did not derive from a common nucleus of operative
facts.  Cruz v. Don Pancho Mkt., LLC, 167 F. Supp. 3d 902, 907
(W.D. Mich. 2016); Bruce v. Sana Health, Inc., No. 19-12174,
2020 WL 7042912 at *3 (E.D. Mich. Nov. 30, 2020); Dray v. Mid-
S. Invs., Inc., No. 06-1010-T/AN, 2007 WL 9705977 at *4 (W.D.
Tenn. Apr. 4, 2007).  Courts in those cases reasoned that the
plaintiffs' alleged violations had no relation to whether the
plaintiffs were entitled to fair wages.  Cruz, 267 F. Supp. at
907 (holding that the plaintiff's FLSA claim did not share a
common nucleus of operative facts with the defendant's
counterclaims for breach of contract, conversion, and fraud);
Bruce, 2020 WL 7042912 at *3 (holding no common nucleus of
operative facts between an FLSA claim and a conversion
counterclaim); Dray, 2007 WL 9705977 at *4 ("Neither party has
asserted that Plaintiff's termination for theft was in any way
related to the Defendant's alleged failure to pay overtime").

In contrast, when the evidence needed to prove a
counterclaim overlaps with the evidence needed to prove a claim,
courts have exercised supplemental jurisdiction.  Dotson v. Ally
Fin. Inc., No. 2:19-CV-2274, 2019 WL 5847848 at *5-6 (W.D. Tenn.
Nov. 7, 2019) (exercising supplemental jurisdiction because a

claim under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. ("TCPA"), and a counterclaim based on an unpaid debt derived from a common nucleus of operative facts); Edwards, 2015 WL 3607297 at *4 (holding that a TCPA claim and a counterclaim based on a debt derived from a common nucleus of operative facts because the debt could justify the telephone calls).  In a case under Title VII, the court found that a counterclaim of fraudulent inducement and a Title VII claim were part of the same case or controversy because the counterclaim related to the plaintiff's employment. Woods v. FacilitySource, LLC, No. 2:13-CV-621, 2014 WL 1783942 at *4 (S.D. Ohio May 5, 2014).

The Court has supplemental jurisdiction over ALSAC's Counterclaims.  The Counterclaims rely on the same facts as Tirone's claims of retaliation.  Title VII retaliation "extends beyond workplace-related or employment-related retaliatory acts and harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).  Title VII retaliation can occur after termination. Patterson v. N. Cent. Tel. Co-op. Corp., No. 2:11-CV-00115, 2014 WL 5322937 at *10-11 (M.D. Tenn. Oct. 17, 2014) (collecting cases).  A plaintiff may bring a Title VII retaliation claim based on post-termination retaliation. Id.  A plaintiff's prima facie case of Title VII retaliation requires showing that (1) the plaintiff engaged in activity protected

under Title VII; (2) the defendant knew about the protected activity; (3) the defendant then took an adverse employment action against the plaintiff; and (4) the plaintiff's protected activity was the but-for cause of the adverse employment action. Lisan v. Wilkie, 835 F. App'x 831, 834 (6th Cir. 2020). The defendant then must show that it had a legitimate non-retaliatory reason for its adverse action against the plaintiff. Id. The plaintiff must then show that the legitimate non-retaliatory reason was pretextual, "which is most commonly done by demonstrating that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action." Id.

Whether Tirone created the website ALSAC accuses him of creating is part of the same case or controversy as ALSAC's Counterclaims that Tirone signed an enforceable NDA, violated the NDA, and committed defamation, false light invasion of privacy, and conversion. Tirone alleges that ALSAC reported him to the FBI to retaliate against him after he was terminated. (D.E. No. 1, ¶¶ 97-107.) Tirone alleges he did not create the website and that ALSAC had "no credible evidence" when it reported Tirone to the FBI. (Id. at ¶¶ 99-101.) ALSAC's Counterclaims allege that Tirone created the website using information he obtained by violating the NDA to defame ALSAC and divert donor money. (Counterclaims, ¶¶ 37.) Whether Tirone

16

violated the NDA and created the website ALSAC accuses him of creating are part of the same dispute or transaction as Tirone's Title VII retaliation claim.   The Court has supplemental jurisdiction over ALSAC's Counterclaims.

A court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."   28 U.S.C. 1367(c).

Tirone makes three arguments against the Court's exercise of supplemental jurisdiction.   Tirone argues that ALSAC raises a novel issue of state law because it asks the Court to "reject" the Tennessee law of false light invasion of privacy.   Tirone argues that ALSAC's Counterclaims substantially predominate over the claims over which the Court has jurisdiction because the Counterclaims focus on post-termination conduct and Tirone's claims "primarily concern" ALSAC's conduct during Tirone's employment.   (See D.E. No. 35, 11.)   Tirone argues that there are other compelling reasons for declining jurisdiction because the Counterclaims are retaliatory.

17

None of Tirone's arguments is persuasive.  Tirone ask the Court to decline jurisdiction over ALSAC's false light invasion of privacy Counterclaim because it raises a novel or complex issue of state law.  As discussed below, Tennessee's false light invasion of privacy law is well settled, not novel or complex.

Many of Tirone's claims focus on ALSAC's pre-termination conduct, but his Title VII retaliation claim is based in part on the FBI raid after ALSAC had reported him.  (D.E No. 26, 8-9.) Whether Tirone violated the NDA and created the website are also significant parts of his retaliation claims.  All address post-termination conduct.

Tirone cites no authority to support his argument that the Counterclaims should be dismissed because they are retaliatory. A plaintiff's recourse for allegedly retaliatory counterclaims is to incorporate that allegation into a retaliation claim.  See E.E.O.C. v. Outback Steakhouse of Fla., Inc., 75 F. Supp. 2d 756, 758 (N.D. Ohio 1999) (deciding that a  plaintiff stated a claim for relief under Title VII for retaliation by alleging that the employer had filed its counterclaims with a retaliatory motive); Patterson, 2014 WL 5322937 at *10 ("Courts in the Sixth Circuit have found that the broad scope of Title VII's antiretaliation provision may cover former employees who become the target of retaliatory lawsuits, or even counterclaims, brought by their former employers after they file charges of

18

discrimination"). Tirone has cited no authority and has not alleged sufficient facts for the Court to decline to exercise jurisdiction over ALSAC's Counterclaims because they are allegedly retaliatory.

The Court will exercise supplemental jurisdiction. Tirone's Motion to Dismiss for lack of subject-matter jurisdiction is **DENIED.**

### C. Choice of Law for State Law Counterclaims

When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assume that Tennessee law applies to the state law Counterclaims. Tirone was employed in Memphis, Tennessee. (Counterclaims, ¶ 9.)   The Court will apply Tennessee substantive law to ALSAC's state law Counterclaims.

### III. Standard of Review

Rule 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  Rule 12(b)(6) applies to a motion to dismiss a counterclaim. See Mountain Motorsports Paving & Constr. LLC v. Yamaha Motor Corp., U.S.A., No. CV 14-76-ART, 2015 WL 12978827 at *1 (E.D. Ky. Mar. 16, 2015). "To survive a motion to

dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." Cooper Butt ex rel. Q.T.R. v. Barr, 954 F.3d 901, 904 (6th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). The factual allegations must be more than speculative. Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). The Court considers the plaintiff's complaint in the light most favorable to the plaintiff. Ryan v. Blackwell, 979 F.3d 519, 525 (6th Cir. 2020) (quoting Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). The court accepts as true all factual allegations, but it does not accept legal conclusions or unwarranted factual inferences as true. Theile v. Michigan, 891 F.3d 240, 243 (6th Cir. 2018). "The plaintiff must present a facially plausible complaint asserting more than bare legal conclusions." Id. (citing Twombly, 550 U.S. at 556; Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009)).

## IV.  Analysis

### A.   Motion to Strike

ALSAC moves to strike paragraphs 88 through 96 and Exhibit 2 of the Complaint (the "challenged paragraphs and exhibit") based on Rule 408 and settlement privilege.

Rule 12(f) permits a "Motion to Strike" "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f).   "Motions to strike are viewed with disfavor and are not frequently granted." Operating Engineers Local 324 Health Care Plan v. G & W Const. Co., 783 F.3d 1045, 1050 (6th Cir. 2015).   Courts will grant a motion to strike "where the complaint contains immaterial allegations that have no bearing on the subject matter of the litigation" or "where the requested relief is unavailable." Johnson v. Cty. of Macomb, No. 08-10108, 2008 WL 2064968 at *1 (E.D. Mich. May 13, 2008).   The decision to grant or deny a motion to strike is within the discretion of the district court. Seay v. Tennessee Valley Auth., 339 F.3d 454 (6th Cir. 2003).

Federal Rule of Evidence 408 provides:

(a) Prohibited Uses. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Rule 408 prohibits evidence of offers to settle and evidence of conduct or statements from settlement negotiations. Eid v. Saint-Gobain Abrasives, Inc., 377 F. App'x 438, 443-444 (6th Cir. 2010). Rule 408 serves three purposes: it promotes settlements, it excludes irrelevant evidence, and it excludes unreliable evidence. Id. at 444. Rule 408 does not protect statements or conduct that occurred during a settlement negotiation, but were unrelated to the negotiation. In Uforma, the Sixth Circuit held that Rule 408 "does not exclude evidence of alleged threats to retaliate for protected activity when the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats." Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B., 111 F.3d 1284, 1294 (6th Cir. 1997).

One court decided, and the parties agreed, that it was not appropriate to consider Rule 408 at the pleading stage. Bailey v. Gibson Hotel Mgmt., Inc., No. 3:18-CV-167, 2018 WL 5815548 at *2 (E.D. Tenn. Nov. 6, 2018). In Collier, the court refused to strike emails attached to the pleadings under Rule 12(f) because the contents themselves were not "redundant, impertinent, or scandalous." Collier v. Cobra Power Corp., No. 3:14-1759, 2015

WL 1600774 at *2 (M.D. Tenn. Apr. 8, 2015). The court also decided that, because Rule 408 does not completely prohibit the admission of settlement negotiations, the emails were potentially admissible for other purposes. Id. at *2-3. A court denied a motion to strike because it was unclear whether Rule 408 would prohibit the introduction of the challenged paragraph, but allowed the defendant to move to exclude the evidence, if appropriate, at a later stage of the litigation. Berry v. Lee, 428 F. Supp. 2d 546, 563-564 (N.D. Tex. 2006). Some courts in other circuits have granted motions to strike based on Rule 408. See U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc., No. CIV. 99-106(JRTRLE), 2002 WL 1285089 at *2 (D. Minn. June 5, 2002) (noting that "courts have routinely granted motions to strike" based on Rule 408 and granting the motion to strike from the complaint paragraphs relating to settlements); Philadelphia's Church of Our Savior v. Concord Twp., No. CIV.A. 03-1766, 2004 WL 1824356 (E.D. Pa. July 27, 2004) (a motion to amend the complaint would be futile because a motion would be granted under Rule 408 to strike the allegations relating to a settlement agreement).

For the purposes of the Motion to Strike, it is not certain that the challenged paragraphs and exhibit are inadmissible. Rule 408 prohibits Tirone from using evidence from settlement

negotiations to prove the validity of his claims or the amount of damages.  See Fed.R.Evid. 408.  Exhibit 2 is a settlement negotiation document.  (D.E. No. 1-2.)  The email says that the attached "letter contains an offer of settlement."  (Id. at 2.)  However, settlement negotiations and conduct or statements made during settlement negotiations may be properly admitted for other purposes.  Fed.R.Evid. 408(b).  At this preliminary stage, the Court will not strike the challenged paragraphs and exhibit from the Complaint based on Rule 408.

ALSAC also argues that the challenged paragraphs and exhibit violate settlement privilege.  The Sixth Circuit recognizes a settlement privilege distinct from Rule 408.  Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 979-980 (6th Cir. 2003).  In Goodyear, the court recognized a settlement privilege based on the "strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations."  Id. at 980.  The court held that the existence of settlement talks was not privileged, but the communications were.  Id. at 981-982.  The court concluded that, "[i]n sum, any communications made in furtherance of settlement are privileged."  Id. at 983.

Settlement privilege is usually applied to third-party discovery of a settlement.  In Collier, the defendants attached

24

to their answer copies of emails evidencing the settlement. Collier, 2015 WL 1600774 at *1. The court found Goodyear inapplicable to a motion to strike because Goodyear addressed the protection of settlement discussions from third-party discovery. Id., at *3 ("That issue is completely different than the issue presented in the case at bar"). Many other courts applying Goodyear's settlement privilege have done so in the context of third-party discovery of settlement communications. See e.g., In re Skelaxin (Metaxalone) Antitrust Litig., No. 1:12-MD-2343, 2014 WL 12769616 at *1-3 (E.D. Tenn. July 29, 2014); Collier, 2015 WL 1600774 at *3; Scotts Co. LLC v. Liberty Mut. Ins. Co., No. CIV.A. 2:06-CV-899, 2007 WL 1723506 at *3 (S.D. Ohio June 11, 2007 (concluding that documents related to litigation between the plaintiff and third-parties were protected by settlement privilege); Grupo Condumex, S.A. de C.V. v. SPX Corp., 331 F. Supp. 2d 623, 629 (N.D. Ohio 2004), aff'd, 195 F. App'x 491 (6th Cir. 2006) (applying settlement privilege to communications between the plaintiff and a third-party).

The challenged paragraphs and exhibit evidence discussions about a potential settlement between Tirone and ALSAC. (See D.E. No. 1, ¶¶ 86-96; D.E. No. 1-2.) No discovery has occurred, and no requests for production have been made. No third party

25

is attempting to discover any communications.  Tirone possesses the email that is Exhibit 2 to the Complaint.  At this preliminary stage of the litigation, it would be inappropriate to decide whether the settlement privilege applies.

The Motion to Strike is **DENIED.**  The Court does not consider whether the facts that support the challenged paragraphs and Exhibit 2 may be admitted or discovered.

### B.   Motion to Dismiss

#### 1. Declaratory Relief & NDA Claim

ALSAC brings a Counterclaim for declaratory judgment asserting that Tirone signed a valid NDA and a second Counterclaim that Tirone breached the NDA.  Tirone does not challenge the declaratory judgment Counterclaim.  He argues that ALSAC has failed to state a claim for breach of the NDA because ALSAC does not specifically allege any email that Tirone disclosed in violation of the NDA.

ALSAC's Counterclaim for breach of the NDA is a breach of contract claim.  See Pureworks, Inc. v. Brady Corp., No. 3:09-CV-983, 2010 WL 3724229 at *15 (M.D. Tenn. Sept. 15, 2010).  Under Tennessee law, the basic elements of breach of contract are "(1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach."  Life Care Centers of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, 79 F.3d 496,

514 (6th Cir. 1996).   In Pureworks, the court found that the plaintiff stated a claim for breach of contract because the plaintiff alleged the existence of the NDA, a specific disclosure breaching the NDA, and harm from the breach.   Pureworks, 2010 WL 3724229 at *15.

The issue at this stage is whether ALSAC has sufficiently pled a breach of the NDA.   Tirone argues that ALSAC fails to state a claim because it does not specifically allege any email Tirone used to violate the NDA and that all of the information about ALSAC on the website was publicly available and not protected by the NDA.   In his reply, Tirone argues that ALSAC's allegations that Tirone made additional disclosures on social media and the internet are "naked assertions."   (D.E. No. 35, 13.)   ALSAC alleges that Tirone sent more than fifty emails with attachments of confidential and/or proprietary information to his personal email account.   (Counterclaims, ¶ 22.)   ALSAC alleges that Tirone disclosed information protected by the NDA. (Id. at ¶¶ 37-39.)   ALSAC specifically lists statements from the website that it says violated the NDA.   (Id. at ¶ 40.)   ALSAC alleges that Tirone made additional statements on social media and the internet to harm ALSAC.   (Id. at ¶ 43.)

ALSAC has stated a claim for breach of contract.   ALSAC alleges that Tirone violated the NDA agreement by creating a website, and it details statements made on the website.   (See

27

<u>Id.</u> at ¶ 40.)   ALSAC's claim that Tirone violated the NDA encompasses more conduct than the emails and attachments.   ALSAC specifically alleges that Tirone sent fifty emails with attachments to himself that contained information he used to violate the NDA.   (Counterclaims, ¶¶ 22-23.)   Tirone's assertion that the website contained only publicly available information is a factual dispute that is not appropriate to decide at this stage.   ALSAC alleges multiple breaches of the NDA, including the specific allegation that Tirone used information protected by the NDA to publish a website.   ALSAC states a claim on which relief may be granted for breach of the NDA.

Tirone's Motion to Dismiss the Counterclaim alleging breach of the NDA is **DENIED.**

### 2. Defamation

ALSAC brings a Counterclaim for defamation.   Tirone argues that ALSAC's claim is barred by the statute of limitations.

In Tennessee, defamation is separately defined as libel, which is written defamation, and slander, which is spoken defamation.   <u>Quality Auto Parts Co. v. Bluff City Buick Co.</u>, 876 S.W.2d 818, 820-821 (Tenn. 1994).   Slander has a six-month statute of limitations.   Tenn. Code Ann. § 28-3-103.   Libel has a one-year statute of limitations.   Tenn. Code Ann. § 28-3-104(a)(1)(A).

28

At the motion to dismiss stage, a court draws all inferences and resolves all ambiguities in favor of the plaintiff. Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013); Rembisz v. Lew, 590 F. App'x 501, 504 (6th Cir. 2014).  A motion to dismiss can be granted based on a statute of limitations "if a plaintiff affirmatively pleads himself out of court." Rembisz, 590 F. App'x at 504; Lutz, 717 F.3d at 464.  The party defending against a motion to dismiss does not have to raise a "triable issue of fact on an affirmative defense." Rembisz, 590 F. App'x at 504.

ALSAC has not affirmatively shown that its claim is time-barred.  ALSAC alleges that it learned Tirone had violated the NDA "[s]hortly after his termination." (Counterclaims, ¶ 37.) ALSAC does not specifically allege when it discovered Tirone was making false statements using the website.  (See Id. at ¶¶ 38-39.)  ALSAC also alleges that Tirone made "additional statements" on social media or the internet to harm ALSAC.  (Id. at ¶ 43.) Tirone argues that the statute of limitations had run because he was terminated in 2017 and ALSAC discovered his alleged NDA violations "shortly after his termination."  Tirone also alleges that the website no longer is active, which he argues is evidence that ALSAC discovered its cause of action more than a year before filing.

Tirone's arguments are not well taken.  When the statute of limitations may have run is unclear.  ALSAC is not required to raise a triable issue on Tirone's affirmative defense invoking the statute at this stage.  See Rembisz, 590 F. App'x at 504. Tirone's arguments depend on drawing inferences against ALSAC, but all reasonable inferences must be drawn in its favor.  See Id.  ALSAC has not affirmatively "pled itself out of court" because it is not required to plead that the statute had not run.  There is no need for a more definite statement because ALSAC is not required to clarify the issue at this stage.

Tirone's Motion to Dismiss Counterclaim 3 is **DENIED**.

### 3. False Light Invasion of Privacy

ALSAC brings a Counterclaim for false light invasion of privacy.

Tennessee recognizes false light invasion of privacy "as a distinct, actionable tort." West v. Media Gen. Convergence, Inc., 53 S.W.3d 640, 645 (Tenn. 2001).  The Tennessee Supreme Court adopted "Section 652I of the Restatement (Second) of Torts (1977) which recognizes that the right to privacy is a personal right."  Id. at 648.  In Tennessee, the right to privacy cannot attach to a corporation or other business entity.  Id.; Seaton v. TripAdvisor LLC, 728 F.3d 592, 601

(6th Cir. 2013) ("Seaton cannot recover on behalf of Grand Resort because it is a business and as such does not have the right under Tennessee law to recover for a violation of its privacy."). A business may not bring a claim for false light invasion of its privacy. See West, 53 S.W.3d at 648 ("only those persons who have been placed in a false light may recover for invasion of their privacy.").

ALSAC cannot bring a false light invasion of privacy Counterclaim. ALSAC is a corporation. (D.E. No. 1, ¶ 10.) Under Tennessee law, a corporation does not have a right to privacy and may not bring a false light invasion of privacy claim. West, 53 S.W.3d at 645; Seaton, 728 F.3d at 601.

ALSAC's response that the prohibition on corporations bringing false claims is only a dictum of the court is not well taken. The Tennessee Supreme Court in West unambiguously determined that a corporation cannot bring a false light invasion of privacy claim. West, at 53 S.W.3d at 648. The court's statement in West that only individuals have privacy rights and may bring false light invasion of privacy claims was intrinsic to the court's recognition of the claim of false light invasion of privacy. See Id. In Seaton, the Sixth Circuit recognized that a business "does not have the right under Tennessee law to recover for a violation of its privacy."

Seaton, 728 F.3d at 601, (citing, West, 53 S.W.3d at 648.) ALSAC may not bring a false light claim.

If the Court decides that ALSAC may not bring a false light claim, ALSAC asks to amend its Counterclaim to add "Rick Shadyac, as well as other named ALSAC representatives" who might bring false light claims against Tirone.  (D.E. No. 34, 12.)  A conditional request to amend in a response to a motion to dismiss is not a proper motion to amend under Rule 15(a). The Sixth Circuit disfavors a bare request to amend a claim attached to a response to a motion to dismiss. PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 699 (6th Cir. 2004), abrogated on other grounds by Doshi v. Gen. Cable Corp., 823 F.3d 1032 (6th Cir. 2016).  ALSAC's request does not provide the text or substance of its proposed amendment.  Nothing in the Counterclaims or ALSAC's response demonstrates that Shadyac or any other ALSAC representative might have a claim for false light invasion of privacy against Tirone.  ALSAC has not properly sought to amend its Counterclaim to add new counterplaintiffs.

Tirone's Motion to Dismiss Counterclaim 4 is **GRANTED**. ALSAC's False Light Counterclaim is **DISMISSED**.

### 4. Conversion

32

ALSAC alleges that Tirone converted ALSAC's property.  In its response, ALSAC asserts that "Tirone's actions were designed to divert donor funds or dissuade donations."  (D.E. No. 34, 13.)

In Tennessee, "[c]onversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights."  PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012).  "Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights."  Id. Conversion occurs when a person dispossesses another of tangible property or dispossesses another through the "active use of an agent."  Id.  "[U]nder certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for 'receiving a chattel.'" Id.  Although money generally is considered intangible, when a specific sum of money is capable of identification or is entrusted to a defendant for a specific use, that money can be considered tangible.  Id.  "Trover lies for the conversion of determinate sums, such as tax receipts or insurance premiums, where there is an obligation to keep the money intact or to

deliver it. There can be, however, no conversion of money unless there was an obligation on the part of the defendant to deliver specific money to the plaintiff or unless the money was wrongfully received by the defendant." Id., quoting 90 C.J.S. Trover and Conversion § 16 (2012).

ALSAC fails to state a claim for conversion. In its Counterclaim for conversion, ALSAC incorporates all of the allegations in its previous Counterclaims and alleges that Tirone's "actions constitute a conversion of ALSAC's property." (Counterclaims, ¶ 72-73.) ALSAC does not dispute that it cannot bring a conversion claim for intangible property, such as data and information.

ALSAC argues, citing PNC, that it states a claim for conversion because money can be tangible property and Tirone's actions "were designed to divert donor funds or dissuade donations." (D.E. No. 34, 13.) There is no reference in the Counterclaims to Tirone's wrongfully receiving money or taking money from ALSAC. (See Counterclaims, ¶ 1-71.) ALSAC alleges that Tirone intended to discourage donors from donating to ALSAC. (Id. at ¶ 42.) Conversion of money requires a specific sum. PNC, 387 S.W.3d at 553. The Tennessee Court of Appeals has used insurance premiums and tax receipts as examples. Id. ALSAC has not pled any specific sum of money that Tirone has converted.

34

Conversion also requires "defiance of the true owner's rights." Id. ALSAC cites no authority for the proposition that it is the true owner of donors' money or that Tirone's discouraging donations exercises dominion over ALSAC's money. ALSAC fails to state a claim on which relief can be granted.

Tirone's Motion to Dismiss Counterclaim 5 is **GRANTED.** ALSAC's claim for conversion is **DISMISSED.**

## V.   Conclusion

ALSAC's Motion to Strike is **DENIED.** Tirone's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. ALSAC's Counterclaims for False Light Invasion of Privacy and Conversion are **DISMISSED** for failure to state a claim.

SO ORDERED this 30th day of March, 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE